**STATE of Alaska, Appellant,**

v.

**Justin D. MONK, Appellee.**

**No. A–5125.**

Court of Appeals of Alaska.

Dec. 16, 1994.

Shannon D. Hanley, Asst. Dist. Atty., Edward E. McNally, Dist. Atty., Anchorage, and Bruce M. Botelho, Atty. Gen., Juneau, for appellant.

Barbara K. Brink, Deputy Public Defender, and John B. Salemi, Public Defender, Anchorage, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

*OPINION*

BRYNER, Chief Judge.

After entering pleas of no contest to the offenses, Justin D. Monk was convicted of driving while intoxicated (DWI), a class A misdemeanor, AS 28.35.030(a)(1), and third-degree assault, a class C felony, AS 11.41.220(a)(2) & (b) (recklessly causing physical injury to another person by means

of a dangerous instrument). On the DWI charge, Superior Court Judge Karen L. Hunt sentenced Monk, a first offender, to one year in jail, with all but the mandatory minimum term of seventy-two hours suspended. On the assault charge, Judge Hunt suspended the imposition of Monk's sentence for three years, directing Monk to complete three years of probation. As special conditions of probation, Judge Hunt ordered Monk, among other things, to pay restitution in the amount of $3,305.40 and to perform three hundred hours of community work.[1] Monk's composite sentence thus provided for no unsuspended incarceration beyond the mandatory minimum time specified for DWI. The state appeals, contending that Monk's sentence is too lenient. We agree and disapprove the sentence.[2]

Monk's convictions stemmed from a motor vehicle collision that occurred while Monk was on a weekend ski trip with friends in Girdwood. Driving with a blood-alcohol level almost twice the legal limit, Monk lost control of his car and collided with two pedestrians who were walking on the roadway. Both pedestrians suffered substantial, albeit not serious, physical injuries. At the time of the offense, Monk was twenty-two years of age and a first offender. He was serving as a yeoman third-class with the Coast Guard in Kodiak. Monk had a good performance record in the Coast Guard and was highly regarded as a diligent and reliable worker by his superiors.

Monk's involvement in this offense appears to have had a significant effect on him. Following the collision, at the direction of the Coast Guard, Monk underwent an evaluation for potential alcohol abuse. He thereafter spent three weeks in residential alcohol treatment at a naval facility. Upon returning to Kodiak, he continued to comply with all aftercare requirements of the treatment program. At the sentencing hearing, Monk's commanding officer testified strongly in Monk's behalf. Monk expressed sincere remorse and accepted responsibility for his conduct.

In imposing sentence, Judge Hunt found nothing particularly aggravated or mitigated in Monk's conduct, concluding that, "[f]or a DWI-based criminal offense this is a typical offense by a typical offender."[3] Judge Hunt went on to find Monk's prospects for rehabilitation to be very good. Given the nature of the offenses, Judge Hunt acknowledged that the sentencing goals of deterrence and community condemnation deserved serious consideration. However, based on Monk's favorable prospects and his status as a youthful first offender, Judge Hunt believed it appropriate to emphasize the sentencing goal of rehabilitation. Finding a "tension between prospects for rehabilitation ... and the condemnation and reaffirmation of community norms," the judge elected to suspend the imposition of Monk's sentence on the felony assault charge and impose no unsuspended jail time beyond the mandatory minimum of three days for the DWI.

On appeal, the state maintains that "deterrence of others and community condemnation dictate that the court should have imposed a sentence greater than that imposed for a first Driving While Intoxicated conviction where no injury resulted." We agree.

Even assuming Monk had been charged with and convicted of DWI alone, his conduct

---

1. In her oral sentencing remarks, Judge Hunt directed Monk to complete his community work within five years of the sentencing hearing. However, Judge Hunt had already unequivocally ordered Monk to spend only three years on probation. Since it is plainly anomalous to require a defendant, as a condition of probation, to engage in conduct that will occur after the expiration of the probationary term, the sentencing court's reference to a five-year period for completing the community work requirement appears on its face to be a mistake. The written judgment does not incorporate the five-year requirement. We interpret the written judgment as correcting the orally imposed sentence and as requiring performance of the community work during the three-year probationary term.

2. When the state appeals a sentence as too lenient, we are not authorized to increase the sentence, but may only express our approval or disapproval thereof. AS 12.55.120(b).

3. Although the accuracy of this conclusion is certainly open to question, we may accept it for purposes of our decision.

and the two injuries that resulted from it could easily have justified a sentence of several months' incarceration, despite his first-offender status. *See, e.g., Brown v. Anchorage,* 764 P.2d 322 (Alaska App.1988). Monk, however, was not convicted of DWI alone: he was also convicted of one count of felony assault. His conduct, moreover, caused physical injury to two separate victims and would thus have supported separate convictions and sentences for two counts of felony assault. *See State v. Dunlop,* 721 P.2d 604, 607 (Alaska 1986).

This is not to say that the imposition of a probationary sentence should have been rejected out of hand by the sentencing court. We have never suggested that non-probationary sentences [4] should normally be imposed in cases involving class C felonies.[5] Particularly when youthful first offenders are convicted of such offenses, rehabilitation will typically deserve strong emphasis, and sentencing courts will have broad latitude to explore sentencing alternatives other than jail time. Here, the record supports the sentencing court's finding that Monk was a youthful first offender whose prospects for rehabilitation were very good. Despite the seriousness of Monk's conduct and of the injuries he caused, Judge Hunt cannot be faulted for emphasizing rehabilitation and seeking to accommodate the sentencing goals of deterrence and rehabilitation by the use of reasonable alternatives to incarceration.

Nevertheless, the only alternative to incarceration imposed by the court in this case was the requirement that Monk complete three hundred hours of community service. At the statutorily prescribed conversion rate of eight hours of community service per day of incarceration,[6] Monk's probation requirement equates to only thirty-seven and one-half days of incarceration—a term that is far from ideally suited to further the sentencing goals of general deterrence and community condemnation. Even this relatively modest alternative to incarceration, however, might have been justified if a more substantial sentence would have been deleterious to the goal of rehabilitation—the goal that the sentencing court had properly deemed paramount in Monk's case. In her sentencing comments, Judge Hunt mentioned such a conflict: the court expressly noted the existence of a "tension" between the goals of rehabilitation and community condemnation. Yet our review of the record discloses no evidence of actual conflict.

With respect to Monk's rehabilitation, the primary concern of the parties and the sentencing court alike focused on the imposition of a sentence that would enable Monk to maintain his Coast Guard career. Monk's commanding officer, who testified at the sentencing hearing, made it clear that a sentence requiring Monk to serve up to sixty days in jail would be unlikely to jeopardize Monk's Coast Guard service. More significant, Monk's commander also suggested that Monk might be ordered to undergo a period of up to ninety days' voluntary restriction to quarters—the equivalent of house arrest—which the Coast Guard would supervise. This latter suggestion was specifically endorsed by Monk at the sentencing hearing. Indeed, in responding to the state's contention that a substantial term of incarceration was appropriate, Monk's counsel affirmatively urged the court to order, instead, a ninety-

---

**4.** A "non-probationary" sentence is one involving ninety days or more of unsuspended incarceration. *See Leuch v. State,* 633 P.2d 1006, 1014 n. 22 (Alaska 1981); *State v. Jackson,* 776 P.2d 320, 326–27 (Alaska App.1989).

**5.** *But see State v. Coats,* 669 P.2d 1329, 1334 (Alaska App.1983) (suggesting that for first offense class C felonies involving serious harm to others, probationary sentences should ordinarily be reserved for particularly promising offenders whose conduct is also mitigated).

**6.** AS 12.55.055(d) specifies that when a sentencing court elects to allow a defendant to perform community work instead of serving time in jail, the defendant must be credited with one day of jail for every eight hours of community work performed. *Cf. State v. Hernandez,* 877 P.2d 1309, 1313–14 n. 6 (Alaska App.1994) (indicating that, in terms of sentencing goals such as deterrence and community condemnation, eight hours of community work cannot realistically be equated to a day of jail time).

day period of confinement to quarters in addition to a substantial period of community service.

■ In suspending the imposition of Monk's sentence, the sentencing court ignored the ninety-day confinement alternative that Monk himself had argued for as a promising sentencing alternative. Without explanation or comment, the court imposed only the requirement of community service.[7] The sentencing record provides no hint as to the sentencing court's reasons for rejecting Monk's proposal to require a ninety-day confinement to quarters. Given the availability of this alternative, we find no support in the record for the court's suggestion that a more substantial sentence than the one actually imposed was precluded by the existence of "tension" between the need to provide for rehabilitation, on the one hand, and community condemnation and general deterrence, on the other.

Having independently reviewed the entire sentencing record, we conclude that the sentence imposed below is clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974). Under the specific circumstances of this case, and given the seriousness of Monk's conduct and of the resulting injuries that he inflicted on two separate victims, the need for general deterrence and community condemnation called, at a minimum, for a more substantial alternative to incarceration than was embodied in the community work requirement imposed below.

The sentence is DISAPPROVED.

COATS, Judge, concurring.

I strongly disagree that Judge Hunt could not properly take into consideration the actions which were taken by the Coast Guard when she imposed her sentence. Monk

served four to six weeks in an alcohol treatment program and spent at least three weeks of this time in residential treatment. The state agreed that he should be given credit for having served a term of imprisonment during the time he was in residential treatment. Judge Hunt properly considered this in imposing sentence. In addition, Judge Hunt properly considered the fact that Monk's driving privileges were revoked for driving on any military installation for twelve months. Judge Hunt could also consider Monk's other extensive efforts at alcohol rehabilitation, even though they were to some extent enforced by the military. The military interest and participation in Monk's rehabilitation is extremely positive.

Monk's commanding officer asked the court to restrict Monk to quarters rather than serve additional jail time. Having Monk restricted to quarters rather than having him serve additional jail time was the cornerstone of the defense argument at sentencing. Judge Hunt did not explain her failure to impose this sanction. I can only assume that she simply forgot to impose this portion of Monk's sentence. I accordingly join the majority opinion disapproving the sentence.

---

7. Monk suggests that, under *Nygren v. State*, 658 P.2d 141 (Alaska App.1983), the three weeks he spent in residential treatment prior to sentencing should be counted as the equivalent of time served. This contention is meritless, however. The argument disregards that Monk underwent the treatment because the Coast Guard required

him to do so, not because of a court order issued in connection with his criminal case. Moreover, although the treatment may have been residential, Monk, as a member of the Coast Guard, was already in a residential setting when he entered treatment, and he returned to a residential setting after he left treatment.